IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LINDA RENEE RAYE,

Plaintiff,

vs. CASE NO. 1:17-cv-210-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

Defendant.
_____________________________/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a period of disability, Disability Insurance Benefits, and Supplemental Security Income pursuant to the Social Security Act. ECF No. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 9, 16, 17. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff's March 2012 applications alleged disability beginning in December 2011. R. 240-46, 347-52. Her applications were denied initially and upon reconsideration. R. 137-44, 145-94, 216-40. Following an initial

hearing, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff in November 2013, finding that Plaintiff was capable of performing her past relevant work as a home health attendant.  R. 199-206.  In March 2015 the Appeals Council granted review and remanded Plaintiff's case for further consideration.  R. 212-14.  A different ALJ issued a second unfavorable decision.  R. 14-33. The Appeals Council denied Plaintiff's request for review.  R. 1–7.

Plaintiff then filed the instant appeal.  ECF No. 1.  Plaintiff argues that the ALJ erred in evaluating her subjective complaints, that the ALJ failed to develop the record, and that she should have been found disabled because the ALJ's residual functional capacity ("RFC") finding is not supported by the record, in light of her combined impairments.  ECF No. 16.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d

580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have

reached a contrary result as finder of fact, and even if the reviewer finds

that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358

(11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the

decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (holding that the court must scrutinize the entire record

to determine reasonableness of factual findings); *Parker v. Bowen,* 793

F.2d 1177 (11th Cir. 1986) (finding that the court must also consider

evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on

plenary review if the decision applies incorrect law, or if the decision fails to

provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't Health & Human

Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, she is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. §§ 404.1520(e)–(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

> *Id.* (internal citations omitted).

## III. SUMMARY OF THE RECORD

### *A. ALJ's Decision*

The ALJ determined that Plaintiff has the severe impairments of a seizure disorder, obesity, hypertension, degenerative disc disease of the lumbar spine, COPD, status post cerebrovascular accident (CVA) with residual effects (including hemiplegia), and chronic pain syndrome. R. 19. Plaintiff does not have an impairment or combination of impairments that meets or equals the listings. R. 20. The ALJ determined that Plaintiff has the RFC for light work, with additional exertional, postural, environmental, and mental limitations. *Id*. The ALJ concluded that Plaintiff's subjective complaints regarding the limiting effects of her impairments were not entirely consistent with the objective medical evidence. Upon evaluating the additional factors that must be considered when assessing the persuasiveness of subjective complaints, the ALJ concluded that Plaintiff's subjective complaints and alleged limitations were not fully persuasive. R. 23-25. To support this finding, the ALJ extensively discussed the relevant medical evidence, including the assessment of an examining consulting physician, Dr. Eftim Adhami, and the opinions of non-examining consultants who concluded that Plaintiff could perform work at greater than the light exertional level. R. 21-25.

The ALJ determined that Plaintiff was unable to return to her past relevant work as a Resident Care Aide, which she had performed at the "very heavy" exertional level. Based upon the testimony of a VE, the ALJ determined that in view of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as office helper, mail clerk, and router. The ALJ therefore found that Plaintiff was not disabled. R. 26-27.

***B. Medical and Opinion Evidence***

The records that are relevant to Plaintiff's claims in this appeal may be summarized as follows. Plaintiff was treated from January 2011 through May 2013, at Putnam Community Medical Center for complaints relating to hypertension, recurrent seizures, and headaches. Plaintiff's CT scans were negative for intracranial hemorrhage, subdural collections, or focal abnormalities. R. 462-63; 566-67.

Plaintiff was treated at UF/Shands between October 27, 2011, and January 5, 2012, for treatment of her seizure disorder. An EEG was normal and negative for epileptiform discharges. R. 483-84.

From May 2012 to late 2015, Plaintiff was treated at Family Medical and Dental Centers/Azalea Health for localized osteoarthritis of the right ankle, hypertension, seizure disorder, COPD and chronic pain syndrome.

R. 472-73.  Clinic notes reflect that her COPD and chronic pain were fairly well-controlled with medication.  Plaintiff was counseled on the importance of medication compliance and smoking cessation.  In December 2013, Plaintiff reported having a generalized tonic-clonic seizure for the first time in six months.  Her medication was increased and was increased again at a follow-up visit after she had a nocturnal seizure.  Her medication was adjusted after Plaintiff reported drowsiness.  In February 2014, Plaintiff reported having no further seizures but she complained of drowsiness.  R. 680-794.

In February 2015, Plaintiff was treated at Putnam Community Medical Center for complaints of slurred speech and facial droop.  She was treated for acute CVA (stroke) as well as breakthrough seizures and hypertension.  Clinic notes reflect that she had subtherapeutic levels of her medication.  A consulting neurologist assessed that Plaintiff's breakthrough seizures were "likely due to subtherapeutic Dilantin level as well as noncompliance with anticonvulsant medications."  R. 808.  Plaintiff was discharged in stable condition with a referral for physical therapy and recommendations to quit smoking and maintain medication compliance.  R. 809-28.

The day after her discharge, Plaintiff presented at UF/Shands with the same complaints and was treated for two more days.  Her EEG was

normal, but imaging confirmed a subacute infarct in the right basal ganglia and right thalamus. The neurologist observed that Plaintiff had “no significant disability” and that she was able to “carry out all usual activities”, despite some symptoms. She was discharged in good condition, with recommendations to stop smoking and maintain medication compliance. Plaintiff followed up at Azalea where she exhibited mildly impaired short-term memory and non-dominant left-sided weakness with slight gait abnormality. R. 755-60; 922-44.

Plaintiff presented to the emergency department on other occasions in 2014-15 for complaints of breakthrough seizures and/or back pain. R. 832-33, 836-38, 844-46. Treatment records from April 2015 reflect that Plaintiff had not complied with lifestyle changes such as smoking cessation, diet, and exercise, nor had she followed through with referrals to an internist, for lab work, and an EEG. R. 680-794, 848, 1056, 1057-59. The notes state that Plaintiff would “run out of anti-epileptic drugs and will go days up to one week before refilling them” and noted her seizures were “refractory due to intermittent non-adherence to medication.” R. 764. July 2015 treatment notes reflect that a second anti-seizure medication would be added to her regimen, but the physician expressed concern over

whether Plaintiff would "actually take it" and opined that most of her seizure
problems were caused by noncompliance.  R. 680-794.

In July and August 2015, Plaintiff received pain management care
and rehabilitation for low back and left ankle pain.  X-ray of her left ankle
showed that she had a calcaneal spur rather than osteoarthritis.  An MRI of
the lumbar spine showed disc bulging at L3-4 and L4-5 with some facet
and ligamentous hypertrophy at both levels and facet hypertrophy at L5-S1.
Plaintiff's left-side weakness was gradually resolving.  As of August 2015,
Plaintiff reported having no difficulty with cooking, eating, toileting,
dressing, or walking, though she sometimes needed some help with
bathing and getting up.  She was referred for additional physical therapy,
ultrasound therapy, and counseled on the need for weight loss and
smoking cessation.  Plaintiff requested pain medication (hydrocodone and
oxycodone), but her physician denied the request.  The medical records do
not reflect that Plaintiff attended the additional physical therapy.  R. 602-79.

The state agency reviewing consultant at the initial review level, Dr.
Albert Ponterio, concluded that Plaintiff was able to perform work at all
exertional levels, with seizure precautions.  The ALJ assigned little weight
to this opinion in view of Plaintiff's other impairments, including her lumbar

spine disorder which limited her to work at the light exertional level.  R. 25, 137-52.

A reconsideration-level nonexamining consultant, Dr. Sebastian Alston, concluded that Plaintiff could perform medium-level work with postural and environmental limitations.  The ALJ afforded this opinion significant weight because it was largely consistent with the evidence, but nonetheless assessed a more restrictive RFC "out of an abundance of caution and in light of the claimant's combination of impairments and obesity."  R. 25, 158-77.

Dr. Eftim Adhami perform a consultative examination of Plaintiff in April 2012. Plaintiff reported that she did not take regular medications.  She reported seizures at night, and denied any day symptoms.  She reported that medication helped when she took it for 30 days.  Plaintiff's examination was essentially normal.  Examination of her spine revealed no lumbar paravertebral muscle spasm, and straight leg testing was normal bilaterally. Plaintiff had full strength in all muscles and no abnormal movements.  Her fine movements were intact, and joints were free in movement without signs of inflammation or fluid.  Her walk was normal, walk on toes and heels was normal, and tandem walk was normal.  Plaintiff's mental status was normal in mood, judgment, and expression; she understood questions

and answered appropriately. R. 478-79. The ALJ afforded significant weight to Dr. Adhami's examination findings because his assessment was generally consistent with the overall evidence of record.

***C. Hearing Testimony***

Plaintiff was 47 years old at the time of her initial hearing in September 2013. *See* R. 26. Plaintiff testified that she began having seizures in late 2010, and was prescribed Dilantin. Most of her seizures occur at night. She also takes medication for high blood pressure. Plaintiff receives medical services at UF/Shands through a program for the medically needy. Her doctors told her that she should not drive due to seizures. Plaintiff testified that she experiences anxiety and had been depressed in the past, but she had not received psychiatric treatment or counseling. She takes pain medication once or twice a day. Her biggest problems are her back and right ankle. She testified that she can be on her feet for about an hour, and can sit for two hours before her back hurts. During the day she does housecleaning, cooking, and grocery shopping. She previously worked at Tacachale from 1985 to 2010, helping handicapped and disabled people with daily living skills. She was dismissed in 2010. R. 76-82, 97-106.

A medical expert (ME) testified that Plaintiff's records reflected a seizure disorder for which Plaintiff was prescribed Dilantin.  He observed that in July 2013, Plaintiff's Dilantin level was 2.5, well below the therapeutic range of 10 to 20, which evidenced that she was probably non-compliant with her medication.  He further testified, however, that "one isolated serum level really doesn't tell you anything[.]" He opined that Plaintiff's seizures did not occur with sufficient frequency to meet the relevant Listing because she had experienced only three seizures in a one-year period.  He also opined that Plaintiff's physicians should have performed a sleep-deprived EEG and should have ordered an MRI of her lumbar spine as part of her neurological examination.  When Plaintiff's counsel inquired whether the ME would recommend further studies, the ALJ pointed out that the agency did not pay for such studies and that it was Plaintiff's burden to provide evidence of disability.  R. 89-96.

At her second hearing in October 2015, following the Appeals Council remand, Plaintiff testified that she was 5'3" tall and weighed 178 pounds. Plaintiff's education included one year of college.  She again described her past work at Tacachale, which is classified as a resident care aide.  Plaintiff had not worked since her dismissal for negligence.  She testified that she is unable to work due to only being able to stand for a certain length of time

and because of risk of seizures.  Plaintiff testified that she follows her doctors' recommendations for medication and treatment.  She used to smoke a pack a day, but had cut back to half a pack a day.  She said that her family members help her pay for cigarettes.  R. 48-54.

Plaintiff testified that she is able to lift 20-30 pounds at most, and sometimes has difficulty sitting because she has to get up and walk around. She can sit for about an hour before taking a break, and stand for about the same time.  She can walk less than half a mile, and has difficulty using stairs.  Plaintiff has never been prescribed an assistive device.  In a typical day, Plaintiff might wash dishes and get breakfast.  She can make simple meals, but does not go grocery shopping.  Plaintiff does her own laundry. Her sister picks her up for visits a couple of days a week.  Plaintiff watches TV but does not belong to any groups or clubs.  She likes to play cards.  R. 54-59.

Plaintiff testified that she has about two seizures per month, usually at night.  They last three to five minutes.  Plaintiff receives pain treatment for low back pain.  She had an MRI in August 2015 in order to receive pain management care.  R. 60-63.

The ALJ posed a hypothetical to the VE that assumed an individual with the RFC for light work with certain postural, exertional, and

environmental limitations. The VE testified that such an individual would not be able to perform Plaintiff's past work. The VE identified jobs that such a person could perform, including office helper, mail clerk, and router. With the additional limitation that the person could perform work limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple decisions and routine changes, the VE testified that the same three jobs would be available. He further testified that a person who had three to four unexcused absences during a 30-day period would be unable to maintain employment. R. 65-67.

The ALJ held the record open to receive additional medical evidence, and then conducted a supplemental hearing in May 2016. R. 36-44. Plaintiff testified that she continued to have seizures as described previously, but that her doctors had increased her Dilantin. She experienced side effects from the medication that included dizziness and crying. *Id*.

## IV. DISCUSSION

### *A. ALJ's Evaluation of Subjective Complaints*

Plaintiff conclusionally argues that the ALJ erred in evaluating her subjective complaints because the ALJ "understated the severity of the

objective medical record." R. 16 at 20.  Plaintiff points to no specific medical evidence that the ALJ failed to adequately consider or understated in assessing her subjective complaints.

To establish disability on the basis of subjective complaints, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite objective medical evidence that confirmed the severity of the alleged pain . . . or that the objectively determined medical conditions are of such a severity that they can be reasonably expected to give rise to the alleged pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

The ALJ assessed Plaintiff's subjective complaints under Social Security Regulation ("SSR") 16-3p. *See* R. 23. As the Eleventh Circuit has explained:

> SSR 16-3p rescinded a previous Social Security ruling that concerned the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility" from its sub-regulatory policy because the Social Security Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character" and that a two-step evaluation process must be used. *Id.* Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. *Id.* at 49,464-66. The Commission stated:
>
>> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . with a title XVI disability claim.
>
> *Id.* at 49,463. In October 2017, the SSA republished SSR 16-3p, clarifying that it was applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The republished version noted that the SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further

> noted that the regulations regarding the evaluation of symptoms were unchanged. *Id.*

*Contreras-Zambrano v. Social Sec. Adm.*, 724 Fed.Appx. 700, 702-03 (11th Cir. 2018).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence. R. 23. The ALJ therefore evaluated the persuasiveness of Plaintiff's statements under the additional factors set forth in SSR 16-3p: the scope of daily activities; the location, duration, frequency and intensity of the symptoms; precipitating or aggravating factors; use of medications; treatment or other measures undertaken for relief; and any other pertinent evidence. *See* 20 C.F.R. §§404.1529, 416.929.

The ALJ first observed that Plaintiff's daily activities, as described in her records and in her testimony, reflected that she can lift 20-30 pounds, sit or stand for an hour at a time, prepare simple meals, care for herself, and do light household works. The ALJ found that her reported standing restrictions were not fully consistent with her treatment records or the medical opinions. R. 23-24.

With respect to the duration, frequency, and intensity of her
symptoms, the ALJ noted that the findings in the record generally reflected
that her impairments were not debilitating and would not preclude work
within the RFC he assessed.  As summarized above, her examination
findings were essentially normal and even following her stroke her strength,
gait, and neurological signs returned to normal fairly rapidly.  In view of the
overall evidence, her back pain did not appear to cause debilitating
limitations. R. 24.

Regarding precipitating and aggravating factors, the ALJ noted
Plaintiff's obesity and smoking, despite being repeatedly advised of the
importance of making lifestyle changes.  Plaintiff's most recent records and
her testimony reflected that she continued smoking.  The ALJ included
postural limitations in the RFC to account for Plaintiff's obesity. *Id.*

As to medication taken to alleviate symptoms, the ALJ observed that
the record contains many references (summarized above) to Plaintiff's
medication noncompliance.  In the same vein, Plaintiff's records reflected
that she had not complied with recommendations for additional testing,
treatment, and physical therapy.  Although Plaintiff reported having limited
financial resources, she indicated that family members assisted her by
buying cigarettes which suggested she may have some resources for

medical treatment, in addition to having charitable programs available. R. 24. On appeal, Plaintiff argues that the ALJ should not have considered noncompliance with treatment because the ME testified that noncompliance cannot be determined from one blood draw. *See* R. 94. But, as explained above, the ALJ relied on additional records noting Plaintiff's noncompliance in making this finding. *See* R. 23-24.

The foregoing establishes that the ALJ applied the correct standard in evaluating Plaintiff's subjective complaints, and that the ALJ did not err in applying the standard to find that Plaintiff's subjective complaints were not entirely consistent with the evidence. Substantial evidence supports the ALJ's conclusion that Plaintiff did not establish disability on the basis of her subjective complaints.

***B. Duty to Develop Record***

Plaintiff contends that the ALJ failed to fully develop the record because the ME "recommended" that an MRI and sleep-deprived EEG be obtained. *See* R. 84-89.

In developing the record, the ALJ must order a consultative examination or obtain medical evidence or expert testimony where the record contains insufficient evidence for the ALJ to make an informed decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). An

ALJ, however, is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision. *Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988); *Kelly v. Heckler*, 761 F.2d 1540, 1540 (11th Cir. 1985).

Further, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–25 (11th Cir. 1995)). Prejudice has been found when the record "has evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. Unit A July 1981)).

First, Plaintiff's argument mischaracterizes the ME's testimony. The ME suggested that Plaintiff's treating physicians should have ordered an MRI and sleep-deprived EEG study in diagnosing Plaintiff. *See* R. 84-89. As the ALJ pointed out at the hearing, Plaintiff's treating doctors apparently did not consider such additional EEG testing necessary as the record does not reflect that they recommended one in order to diagnose Plaintiff's seizures. *Id.* Plaintiff's diagnosis of seizures is well-established in the medical records, and was accepted as a severe impairment by the ALJ.

There is nothing in the record that suggests that a sleep-deprived EEG was necessary to enable the ALJ to render his decision, or that Plaintiff was prejudiced in any way because the ALJ did not order such testing.

Further, contrary to Plaintiff's argument, Plaintiff testified that she *did* have an MRI in August 2015 in order to receive pain management care. *See* R. 60-63. The ALJ considered the results of that MRI in determining Plaintiff's RFC. R. 22.

For these reasons, the Court concludes that the ALJ did not fail in his duty to develop the record.

### *C. Substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform light work with additional limitations.*

Plaintiff conclusionally argues that it is "implausible" that her combined impairments would allow her to engage in a reduced range of light work, as found by the ALJ. ECF No. 16 at 23. She contends that substantial evidence does not support her ability to "sit and stand at will for eight hours a day five days a week at work." *Id*. at 25.

The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) (2017), with additional limitations. A claimant's RFC is the most a claimant can do, despite his limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is based, not only on medical opinions,

but also the ALJ's review of all relevant evidence in the record. *Id.*; 20 C.F.R. § 404.1546.

Under SSR 83-10, "light work" is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

Additionally, SSR 83-10 defines "frequent" as:

> occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

Plaintiff points to no evidence that supports her contention that she cannot sit or stand at will for eight hours a day. The ALJ based his RFC assessment on Plaintiff's testimony about her functional abilities, but found

that her claimed standing restrictions were not consistent with her treatment records, medical opinions, or treatment compliance, which included referral for additional physical therapy that Plaintiff did not attend. The ALJ also afforded significant weight to Dr. Adhami's examination, which was essentially normal and noted no limitations on Plaintiff's ability to stand.

As the ALJ pointed out, other opinion evidence assessed that Plaintiff was capable of work at greater than light exertional levels, but the ALJ assessed a more restrictive RFC specifically to account for Plaintiff's combination of impairments and obesity.  *See* R. 25.

Plaintiff has not shown that the medical evidence supports greater functional limitations than those assessed by the ALJ.  On this record, the Court concludes that the ALJ's determination is supported by substantial evidence.

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 5th day of July 2018.

s/Gary R. Jones
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.